IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AMY DAWN JEFFRIES,

                    Plaintiff,

v.                                    CIVIL ACTION NO. 1:12CV162
                                           (Judge Keeley)

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

     Pursuant to 28 U.S.C. §636(b)(1)(B), Fed. R. Civ. P. 72(b),
and L.R. Civ. P. 4.01(d), on October 16, 2012, the Court referred
this Social Security action to United States Magistrate John S.
Kaull ("Magistrate Judge" or "magistrate judge") with directions to
submit proposed findings of fact and a recommendation for
disposition.

     On January 14, 2014, Magistrate Judge Kaull filed his Report
and Recommendation ("R&R") (dkt. no. 15), which recommended that
the Court grant the defendant's motion for summary judgment, deny
Jeffries' motion for summary judgment, and dismiss this case with
prejudice. He further directed the parties, in accordance with 28
U.S.C. §636(b)(1) and Rule 6(e) of the Federal Rules of Civil
Procedure, to file any written objections with the Clerk of Court
within fourteen (14) days after being served with a copy of the
R&R. On January 26, 2014, plaintiff, Amy Dawn Jeffries

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

("Jeffries'), through counsel, filed objections to the R&R. (Dkt. No. 16.) On February 6, 2014, the Commissioner responded to the objections, (dkt. no. 17), urging the Court to adopt the magistrate judge's R&R.

## I.  PROCEDURAL BACKGROUND

On March 12, 2009, Jeffries filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging a disability onset of December 8, 2008 due to "post-traumatic stress disorder ("PTSD"), diabetes, high blood pressure, right and left leg pain, left hand pain, high cholesterol, high triglycerides, kidney problems, anxiety, back pain, numbness in hand, and headaches." (R. at 183-95, 219, 223.) Following the Commissioner's denial of her applications initially and on reconsideration (R. at 93-96), Jeffries requested a hearing. On January 26, 20011, an Administrative Law Judge ("ALJ") conducted a hearing at which Jeffries, represented by counsel, and an impartial vocational expert ("VE") appeared and testified. (R. at 47-91.) On March 31, 2011, the ALJ determined that Jeffries was not disabled. (R. at 26-46.) On September 7, 2012, the Appeals Council denied Jeffries' request for review (R. at 25), making the ALJ's decision the final decision of the Commissioner. (R. at 1-7.) On

October 16, 2012, Jeffries timely filed this action seeking review of that final decision. (Dkt. No. 1.)

## II.  PLAINTIFF'S BACKGROUND

On the date of the administrative hearing, Jeffries was thirty-nine (39) years old (R. at 39, 47), and is considered a younger person pursuant to 20 CFR 404.1563 and 416.963. She graduated from high school (R. at 39), and has a relevant work history that includes employment as an insurance salesperson and manager. (R. at 224, 526.)

## III.  ADMINISTRATIVE FINDINGS

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520 and 416.920, the ALJ concluded as follows:

1.  Jeffries met the insured status requirements of the Social Security Act through December 31, 2013;

2.  Jeffries had not engaged in substantial gainful activity since December 8, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3.  Jeffries has the following severe impairments: mild to moderate degenerative changes of the lumbar spine, history of cervical strain, history of fracture of the left metacarpal, history of left knee surgery, bilateral degenerative arthritis of the knees, obesity, history of recurrent asthmatic bronchitis, kidney cyst, major depressive disorder, anxiety disorder, diagnosis of pain disorder, and PTSD (20 CFR 404.1520(c) and 416.920(c));

4.      Jeffries does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5.      Jeffries has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that has an option to sit or stand without breaking tasks, requires no climbing of ropes, ladders, scaffolds, kneeling, or crawling and only occasional performance of other postural movements (i.e., climbing ramps/stairs, balancing, and stooping), no exposure to temperature extremes, wet or humid conditions, environmental pollutants, or hazards (e.g., dangerous moving machinery, (sic) or unprotected heights), has a low stress environment with no production/assembly line type of pace and no independent decision making responsibilities, is unskilled work activity, consisting of only routine and repetitive instructions and tasks, and requires no interaction with the general public and no more than occasional interaction with co-workers and supervisors;

6.      Jeffries is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7.      Jeffries was born on December 8, 1971[,] was 37 years old on the alleged disability onset date and is considered a younger individual (20 CFR 404.1563 and 416.963);

8.      Jeffries has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Jeffries is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering Jeffries' age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)); and

11. Jeffries has not been under a disability, as defined in the Social Security Act, from December 8, 2008[,] through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 31-40.)

## IV. OBJECTIONS

### A. Amy Dawn Jeffries

Jeffries contends that the magistrate judge erred in concluding that the ALJ had correctly excluded her carpal tunnel syndrome ("CTS") and kidney condition as severe impairments when he made his residual functional capacity ("RFC") assessment. She also contends that the evidence of record does not substantially support the ALJ's determination that she lacked credibility, or his decision to assign little weight to the RFC opinion of Dr. Vonda McElwain ("Dr. V. McElwain"), and the functional assessment of Dr. Joseph. Finally, she contends that the magistrate judge erred in agreeing with the Appeals Council's decision not to remand the case to the ALJ on the basis of material evidence of CTS and new evidence of fibromyalgia. (Dkt. No. 16.)

B.    **Response of Commissioner of Social Security**

The Commissioner contends that the record contains substantial evidence to support the ALJ's evaluation of Jeffries' CTS, kidney impairment, credibility, and medical evidence. He further contends that the ALJ correctly determined that the Appeals Council did not err in failing to remand the case on the basis of "material evidence" of CTS or "new" evidence of fibromyalgia. (Dkt. No. 17.)

## V.    MEDICAL EVIDENCE

For purposes of this review, the Court incorporates and adopts the magistrate judge's discussion of the medical and non-medical evidence contained in the R&R. (Dkt. No. 15 at 2-27.)

## VI.    DISCUSSION

A.    **Scope of Review**

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)).  In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.  1987).

B.    **Carpal Tunnel Syndrome**

Jeffries contends that the record lacks substantial evidence to support the ALJ's decision that, because her CTS did not cause any limitations of the use of her hands or wrists, it was not a severe impairment. She also argues that the Appeals Council should have remanded the case to the ALJ based on the new and material evidence of treatment and surgery for CTS that she submitted after the ALJ's decision. (Dkt. No. 11 at 3.)

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

With regard to Jeffries' hand and wrist complaints, the ALJ determined:

> The record contains a diagnosis of bilateral carpal tunnel syndrome; however, there is no electromyography ("EMG") to confirm the presence of this condition. Further, as discussed, below, while the claimant has complained of numbness in her hands and arms, the physical findings are inconsistent with carpal tunnel syndrome. Indeed, she had negative Tinel and Phalen signs, and she has 5/5 strength in her upper extremities. Exhibits 17F and 32F. To give the claimant the utmost benefit of the doubt, the undersigned finds that this is a medically determinable impairment, but that it is nonsevere with no associated functional limitations.

(R. at 32.)

At step two of the sequential evaluation, Jeffries was required to provide proof of a severe impairment. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). Mere diagnosis of a condition is insufficient to prove disability; there must be a showing of related functional loss. See Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986). "The severity standard is a slight one in this Circuit." Stemple v. Astrue, 475 F. Supp. 2d 527, 536 (D. Md. 2007). An impairment is severe "unless it has such *minimal* effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012,

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

1014 (4th Cir. 1984) (internal citation and quotation omitted)
(emphasis in original); see also 20 C.F.R. §§ 404.1521(a)("An
impairment . . . is not severe if it does not significantly limit
your physical or mental ability to do basic work activities.").

As the magistrate judge noted in the R&R, the record includes
an EMG performed in 2005, following Jeffries' auto accident in
2004. The EMG indicated bilateral CTS, worse on the left. (R.368.)
The doctor who read the EMG noted the presence of "compression of
her carpal volar ligaments and positive Tinel's and Phalen's
signs," and recommended carpal tunnel release with decompression of
the nerve. He scheduled the surgery for September of that year but,
following Workers' Compensation's denial for payment, the surgery
did not occur. (Dkt. No. 15 at 38.)

Despite this, the more recent evidence in the record documents
that Jeffries has no manipulative limitations and possesses good
strength in her hands. (See R. 549, 571-74, 657-58.) In particular,
the magistrate judge noted:

> In 2004 at the time of her accident, Dr. Grady indicated
> Jeffries had CTS that resulted in "some sensory
> abnormality of the right hand" and "some residual
> posttraumatic tendinitis and impairment of the thumb,"
> also on the right hand (dkt. no. 15 at 38).

The R&R also referenced the following evidence in the record:

9

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

1.   An October 14, 2005 report, in which Dr. Grady indicated that Jeffries had "slightly decreased range of motion of the right hand" and no "residual problems" from her left long finger fracture (R. at 461);

2.   A May 13 2009 report, in which Dr. Sabio indicated that Jeffries complained only that her right hand got numb "on and off."  His examination revealed full strength in the upper extremities and normal fine manipulation, handgrips measured at 18 Kg on the right and 6 Kg on the left and no diagnosis of CTS or any hand, wrist, or arm disorder. (R. at 549);

3.   A May 28, 2009 Physical Residual Functional Capacity Assessment, in which Dr. Morgan indicated that Jeffries could occasionally lift and carry 50 pounds, could frequently lift and carry 25 pounds, and had no manipulative limitations. (R. at 552-59);

4.   An August 13, 2009 Physical Residual Functional Capacity Assessment, in which Dr. Franyutti indicated that Jeffries could occasionally lift and carry 20 pounds, could frequently lift and carry 10 pounds, and had no manipulative limitations.  (R. at 571-74); and

5.   A September 17, 2010 report, in which Dr. Luke McElwain (Dr. L. McElwain) indicated that Jeffries complained of her right hand "going numb" and noted that she could move her extremities "well" and had good strength, normal sensation, negative Tinel's and Phalen's signs, and a diagnosis of intermittent paresthesias[1] in her hands. (R. at 657-58.)

---

[1]An abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus. Dorland's Illustrated Medical Dictionary ("Dorland's"), p. 1383 (32d ed. 2011).

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Accordingly, the magistrate judge concluded that, although the record does contain an EMG from 2005 indicating the presence of bilateral CTS, more recent medical evidence in the record was compelling and established that Jeffries does not have residual manipulative limitations, and possesses good strength in her hands. (Dkt. No. 15 at 39.) The magistrate judge's conclusion that Jeffries failed to meet her burden of demonstrating that her CTS resulted in a functional loss sufficient to limit her ability to perform work related activities therefore is not erroneous. See Gross, 785 F.2d at 1165; Grant, 699 F.2d at 191.

## C.  **Kidney Disease/Calcinosis**

Jeffries next contends that the evidence in the record does not support the magistrate judge's conclusion that substantial evidence supports the ALJ's decision not to include her chronic kidney disease or kidney calcinosis as a severe impairment in his RFC analysis. She argues that the ALJ should have included her need for additional bathroom breaks in his consideration of her RFC. (Dkt. No. 16 at 16.)

An RFC represents the most a claimant can do in a work setting despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). "RFC is an assessment of an

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" for "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

When assessing a claimant's RFC, the Social Security Administration ("the Administration") bases its assessment on "all the relevant evidence" in the case record. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). This assessment, however, only includes the "functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p, at *1. Importantly, although the Administration is responsible for making the RFC assessment, the claimant has the burden of proving her RFC. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (per curiam) (citing Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983)) (claimant has the burden of production and proof through the fourth step of the sequential analysis); see also 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3) (claimant is responsible for providing evidence to be used to develop RFC).

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Despite Jeffries' argument to the contrary, the evidence establishes that the ALJ did include Jeffries' kidney cyst as a severe impairment. (R. at 31.) Moreover, regarding her kidney calcinosis, he stated:

> In August 2009, the claimant underwent a renal ultrasound, which showed no renal obstruction. However, there was a complicated cyst in the right kidney as well as non-obstructing stones in the left kidney. . . . These findings were somewhat confirmed by a CT scan of the abdomen and pelvis. . . . In September 2009, the claimant followed up for her kidney condition with the Rural Health Clinic, seeking Lortab for pain allegedly associated with the kidney stones. The claimant was refused this medication. . . . In October 2009, the claimant presented to Dr. N. Guirguis, M.D., at the Kidney Center for an evaluation of her kidney condition. He opined that the claimant's condition mirrored the presentation of tumoral calcinosis, and he recommended a complete work-up.

(R. at 35–36.)

In his review of the evidence, the magistrate judge specifically referenced the treatment with medication and lab work between 2009 and 2010 that Jeffries received from Dr. Guirguis, her nephrologist. (Dkt. No. 15 at 13–17), (R. at 613–14, 618–19, 761–62, 764.) On October 22, 2009, Dr. Guirguis specifically noted that Jeffries could experience "pain similar to kidney stones in absence of actual stones" because of her kidney condition (R. at 598.) Furthermore, his notes from a number of examinations of Jeffries

indicate that her kidneys were normal. (R. at 615, 622, 643, 652.) To the issue at hand, however, the magistrate judge noted the absence of any notation in the record from Dr. Guirguis that Jeffries needed an excessive number of bathroom breaks during a day, or that the number of times she used the bathroom in a day was excessive. (Dkt. No. 15 at 41.)

The evidence supports the conclusion that Jeffries failed to establish a need for additional bathroom breaks. Therefore, there is substantial evidence in the record supporting the ALJ's evaluation of Jeffries' kidney condition and assessment of her RFC. See <u>Hunter</u>, 993 F.2d at 35.

**D.    <u>Credibility Analysis</u>**

Jeffries next contends that the magistrate judge erred in finding that the record contained substantial evidence to support the ALJ's analysis at step one of the two prong analysis found in <u>Craig v. Chater</u>, 76 F.3d 585 (4th Cir. 1996).

In the seminal case of <u>Craig v. Chater</u>, 76 F.3d 585 (4th Cir. 1996), the Fourth Circuit established a two-prong test for evaluating a claimant's subjective complaints of pain. The first prong requires an ALJ to determine whether the objective evidence of record establishes the existence of a medical impairment, or

impairments resulting from anatomical, physiological or psychological abnormalities that could reasonably be expected to produce the pain or other symptom alleged. <u>Id</u>. at 594. Under the second prong, an ALJ must "expressly consider" whether a claimant has such an impairment. <u>Id.</u> at 596. If a claimant satisfies these two prongs, an ALJ then must evaluate the "intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." <u>Id.</u> at 595. In this evaluation, an ALJ must consider

> not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

<u>Id.</u>

Prior to <u>Craig</u>, in <u>Shively v. Heckler</u>, 739 F.2d 987, 989-90 (4th Cir. 1984), the Fourth Circuit held that, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight" (citing <u>Tyler v. Weinberger</u>, 409 F.Supp. 776 (E.D. Va. 1976)). Once made, an ALJ's

credibility determination will be reversed only "if the claimant can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (quoting Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)).

Here, the magistrate judge determined that, even though the ALJ did not quote the exact language of Craig, his statement "that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . . ." satisfied the first prong of Craig. (R.35.) The ALJ then proceeded to the second prong of Craig, and evaluated the intensity and persistence of Jeffries' pain, and the extent to which it affected her ability to work.

It is here that Jeffries argues that the ALJ's finding is "based on factual errors and significant omissions." (Dkt. No. 16 at 4.) She contends that he failed to consider the following evidence of record:

> 1. A more convincing source of back pain than the X-ray showing minor degenerative changes of the lumbar spine, and the X-ray showing mild to moderate degenerative changes with suspected spondylolysis at L5. That evidence consists of the statement and records of Dr. Guirguis confirming Jeffries' kidney disease as a source of pain. (R. at 35-36);

2.    a) The lack of medical insurance and "scarce resources" as the cause of the lapse in her treatment because she was not awarded Medicaid until April 30, 2009.  (R. at 522-523);

b) Two consultative examinations for DDS in May, 2009, [R. at 524, 546] and treatment at Rural Health Clinic in Webster Springs in June, 2009. (R. at 564);

c) The prescription from Guirguis for narcotics after his evaluation and diagnoses, and later by the clinic physicians.  (R. at 656, 731, R. at 35);

3.    The objective evidence supporting the diagnoses of diabetes mellitus, hypertension, dyslipidemia, anxiety, chronic back pain, right upper extremity neuropathy, and bronchitis by the Rural Health Clinic. (R. at 35);

4.    The objective clinical evidence of crepitance, tenderness, and limitation of motion of the knees from Dr. Sabio, as well as the X-ray of the left knee. (R. at 546-550);

5.    The evidence of treatment throughout the time of the claim by Dr. Guirguis on 10/8/09, 10/22/09, 12/15/09, 1/5/10, 4/20/10, 9/13/10, 1/25/11.  (R. at 599-611, 612-637, 638-652, 759-760, 761-773); office visits at the Rural Health Clinic on 6/30/09, 7/28/09, 8/20/09, 8/27/09, 9/30/09, 3/24/10, 4/16/10, 7/16/10, 9/17/10, 10/12/10; a colonoscopy and gall bladder surgery in November and December 2010 (R. at 754-758); visits to the clinic on 1/20/11 (R. at 560-569, 584-595, 653-671, 730-743, 744, 745-753);

6.    Mental health treatment from her primary care physicians at Rural Health Clinic, who prescribed Xanax, Cymbalta, and Amitriptyline. (R. at 585-6);

7.    Her statement in January, 2011 to her treating physician, Dr. V. McElwain, that she was doing well actually related to the fact that she had recuperated from recent

gallbladder surgery with complete relief of gastrointestinal symptoms. (R. at 744); and

8.      The evidence that the advice from her physicians to lose weight and stop smoking because she had been reported as morbidly obese since at least 1999, when she weighed 285 pounds, was impossible to follow because appetite suppressants had been ineffective for her (R. at 701), and her kidney diet conflicted with her diabetic diet, thus making it difficult to manage her diet and lose weight as well. (R. at 60.)

The record however, actually establishes that the ALJ did consider all of this evidence. His decision notes the following:

[T]he claimant underwent an x-ray of her lumbar spine which showed only *minor* degenerative changes of the lumbar spine. . . . Obviously, this is inconsistent with the claimant's allegations of severe back pain of an eight of ten in terms of severity.

The consultative examination occurred during what appears to be another significant gap in the claimant's treatment. Indeed, after her March 2009 visit at the Rural Health Clinic, the claimant did not have another visit until June 2009 when she presented again at the Rural Health Clinic, seeking to establish a physician. At that time, the claimant complained that she "just hasn't felt well for the past few weeks," again, suggesting that the claimant did not experience significant symptoms prior to that time. During that visit, the claimant was diagnosed with diabetes mellitus, hypertension, dyslipidemia, anxiety, chronic back pain, right upper extremity neuropathy, and bronchitis. It is noted, however, that these diagnoses were based nearly entirely on the claimant's subjective complaints, and it is also noted that the claimant's treating physician declined to prescribe the claimant any narcotic medications for pain. . . .

> In July 2009, the claimant underwent an x-ray of the left
> knee, which showed only mild osteoarthritis.

(R. at 35.)

Significantly, the ALJ's review noted that, in his office notes, Dr. Guirguis did not identify Jeffries' kidney disease as a source of her back pain. In fact, in a note dated October 22, 2009, he indicated that her complaints of back pain, tender bones, and lost height suggested "underlying osteopenia." (R. at 597.)

Furthermore, as the magistrate judge noted in the R&R, the record contains no medical evidence to support Jeffries' contention that her kidney disease was a source of her back pain. (dkt. no. 15 at 46.) The treatment notes from Rural Health Clinic dated June 30, 2009, regarding back pain were based solely on Jeffries' subjective complaints made during her appointment to establish a primary care physician. (R. at 563-64.)

Review of Dr. Sabio's consultative examination dated May 13, 2009, documents that Jeffries had "tenderness of both knees with crepitus on movement," and that she could not extend her knees bilaterally "due to pain and stiffness in both knees." (R. at 548-9.) However, in March, 2010, Dr. V. McElwain reported that Jeffries had no complaints of pain in her legs. (R. at 36.) Although

Jeffries argues that her comment in January, 2011 to Dr. V. McElwain that she was "doing great" related only to her recovery from recent gallbladder surgery, the evidence is undisputed that the report of the office visit contains no mention of complaints of knee pain, nor does Dr. V. McElwain note any crepitus, tenderness, or limitation of movement upon examination. (R. at 744.)

Jeffries next argues that the ALJ failed to note the mental health treatment she received from her primary care physicians at the Rural Health Clinic. The record contains no evidence that Jeffries had "a longitudinal history of mental health treatment since the alleged onset date of disability," which is a "factor that the ALJ noted detracts from the credibility of her allegations concerning the severity of her symptoms." (R. at 36.)

Moreover, despite her mental health complaints, the record contains no evidence that Jeffries had attended "mental health treatment since the alleged onset of disability." (R. at 37.) Furthermore, even though the magistrate judge noted a diagnosis of depression from her primary care physicians at the Rural Health Clinic, for which they prescribed Xanax in August 27, 2009, (R. at 585), Jeffries reported the Xanax was controlling her anxiety. (R. at 586.)

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Jeffries also disagreed with the ALJ's determination that her "apparent ambivalence and lack of motivation to follow through with medically advised treatment" undermined her credibility. (R. at 37.) Specifically, the ALJ stated:

> Unfortunately, many of the claimant's severe impairments are likely the result of her failure to properly take care of herself. She was urged by her physicians to lose weight and quit smoking, but she declined to do so. The claimant's failure to heed her physician's warnings is not indicative of a good faith desire to improve her health so as to facilitate a return to the workforce and contraindicates any intractable disability.

(Id.)

He noted that the medical evidence of record contained numerous directives to Jeffries to lose weight and stop smoking. He further noted that, on May 13, and June 30, 2009, Jeffries weighed 276 pounds (R. at 548, 563); on March 24, 2010, she weighed 292 pounds (R. at 663-64); on July 16, 2010, she weighed 274 pounds (R. at 659); on September 17, 2010, she weighed 278 pounds (R. at 657-58); and at her hearing, she weighed 280 pounds. (R. at 60.) Thus, despite being told by her physicians to lose weight, Jeffries remained morbidly obese and her weight changed only slightly from the alleged disability onset date until the ALJ's decision.

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Furthermore, as the magistrate judge noted, the record also contains no objective evidence to support Jeffries' allegation that she was unable to lose weight due to a conflict between her kidney diet and her diabetic diet. Therefore, the magistrate judge's conclusion that the ALJ considered Jeffries' statements regarding her efforts to lose weight when he weighed her credibility is not erroneous. See 20 C.F.R. §§ 404.1529(c)(1)-(4), 416.929(c)(1)-(4).

The medical evidence of record also documents numerous occasions on which Jeffries was advised to stop smoking. (R. at 585, 663-64, 731, 734-35, 744.) In Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984), the Fourth Circuit held that the Commissioner can only "deny the claimant benefits because of alcohol or tobacco use if she finds that a physician has prescribed that the claimant stop smoking or drinking and the claimant is able voluntarily to stop." As to this, the magistrate judge concluded that the ALJ should not have relied on the evidence that Jeffries continued to smoke, because a finding that she could voluntarily stop smoking had not been made.

Nevertheless, he determined that this error did not affect the ALJ's credibility determination because, as already noted, the record is replete with objective medical evidence documenting

Jeffries' contradictory statements about her pain and symptoms. See Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005) (quoting Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004)).

It is clear that the magistrate judge thoroughly considered the ALJ's evaluation of all of the evidence of record, including Jeffries' activities of daily living, her statements about the location, duration, frequency, and intensity of her pain, the precipitating and aggravating factors that caused her pain, the treatment she underwent to mitigate pain, and other factors relative to her condition, and therefore complied with both Craig and 20 C.F.R. § 404.1529(c)(3). The magistrate judge's conclusion that the record contains substantial evidence supporting the ALJ's credibility determination is not erroneous.

**E.    Weight Assigned to the Opinions of Drs. V. McElwain and Joseph**

Jeffries asserts that the ALJ erred in assigning little weight to the functional assessments completed by her treating physician, Dr. V. McElwain, and examining psychologist, Dr. Joseph. (Dkt. No. 16 at 4-5). "Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to

rebut it." <u>Craig</u>, 76 F. 3d at 589.  The treating physician's

opinion should be accorded great weight because "it reflects an

expert judgment based on a continuing observation of the patient's

condition over a prolonged period of time." <u>Mitchell v. Schweiker</u>,

699 F.2d 185, 187 (4th Cir. 1983).

    In <u>Craig</u>, however, the Fourth Circuit held:

> Circuit precedent does not require that a
> treating physician's testimony "be given
> controlling weight." <u>Hunter v. Sullivan</u>, 993
> F.2d 31, 35 (4th Cir. 1992). In fact, 20
> C.F.R. §§ 404.1527(c)(2) and 416.927(d)(2)
> (emphasis added) both provide,
>
> > [i]f we find that a treating
> > source's opinion on the issue(s) of
> > the nature and severity of [the]
> > impairment(s) is well supported by
> > medically acceptable clinical and
> > laboratory diagnostic techniques and
> > is not inconsistent with the other
> > substantial evidence in [the] case
> > record, we will give it controlling
> > weight.
>
> > [4,5] By negative implication, if a
> > physician's opinion is not supported by
> > clinical evidence or if it is inconsistent
> > with other substantial evidence, it should be
> > accorded significantly less weight.

76 F.3d at 590.  Furthermore, "[n]either the opinion of a treating

physician nor the determination of another governmental entity are

binding on the Secretary." <u>DeLoatch v. Heckler</u>, 715 F.2d 148, 150

n.1 (4th Cir. 1983).

### 1. <u>Dr. Vonda McElwain</u>

Jeffries contends that the opinion of Dr. V. McElwain should

have been assigned controlling weight because she was the only

examining medical practitioner to provide a functional assessment

during the period at issue, and because her opinion is consistent

with Jeffries' statements and testimony, and with the record.

(Dkt. No. 16 at 4.) After reviewing Dr. V. McElwain's January, 2011

functional assessment, the ALJ assigned it "little weight," noting:

> Dr. McElwain served as the claimant's treating physician
> since March 2010, but she examined the claimant
> infrequently.  It does not appear that she conducted any
> extensive testing to gauge the severity of the claimant's
> complaints.  Indeed, Dr. McElwain noted on multiple
> occasions that she wanted the claimant to undergo
> electromyography ("EMG"), but there is no evidence that
> this ever occurred. . . . Further, her report is so
> contradictory as to suggest that she placed very little
> thought into her evaluation. In fact, Dr. McElwain
> inexplicably opined that the claimant was capable of
> light exertional work, but that she was incapable of
> sedentary exertional work. Dr. McElwain indicated the
> claimant had difficulty with numbness in the upper
> extremities, but she admitted that the claimant had not
> been evaluated with an EMG.  Dr. McElwain opined that the
> claimant was capable of performing full-time work as of

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

December 31, 2008 (a date near the time of the claimant's
alleged onset date of disability), but she declined to
offer an opinion as to when the claimant became incapable
of full-time work.  Overall, Dr. McElwain's opinion does
not reflect a thoughtful review of the record and is of
little value to the trier of fact.

(R. at 38.)

While <u>Mitchell</u> held that a treating physician's opinion should

be afforded great weight because "it reflects an expert judgment

based on a continuing observation of the patient's condition over

a prolonged period of time, 699 F.2d at 187," the record here

establishes that Dr. V. McElwain actually examined Jeffries only

three times in the time period immediately before she completed the

functional capacity form – March, 2010, October, 2010, and January,

2011 – and did not schedule Jeffries for any further examinations.

Accordingly, the magistrate judge's conclusion that there was no

"continuing observation" of Jeffries' conditions "over a prolonged

period of time" is not erroneous.

The magistrate judge also agreed with the ALJ's assignment of

"little weight" to Dr. V. McElwain's functional assessment, noting

that the January 22, 2011 Primary Care Physician Questionnaire was

in a "check off" form, which has been referred to by other courts

as "weak evidence at best."  <u>See, e.g.</u>, <u>Mason v. Shalala</u>, 994 F.2d

1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Mason has been cited with approval by a number of district courts within the Fourth Circuit. See, e.g., Wright v. Astrue, 2013 WL 275993, at *5 (W.D. Va. Jan. 24, 2013); McGlothlen v. Astrue, 2012 WL 3647411, at *6 (Aug. 23, E.D.N.C. 2012); Bishop v. Astrue, 2012 WL 951775, at *3 n.5 (D.S.C. Mar. 20, 2012). Moreover, even though asked to identify the clinical findings and laboratory testing supporting her evaluation, Dr. V. McElwain failed to specifically note any testing, and simply referenced "labs, specialist consults, imaging."

Dr. V. McElwain indicated on the form 1) that Jeffries could not perform heavy, medium, or sedentary work but could perform light work; 2) that Jeffries must alternate positions frequently and could only sit, stand, and walk for approximately one hour at a time; 3) that Jeffries would only be able to be on her feet two to three hours of an eight-hour period; and 4) that Jeffries would only be able to sit upright two to three hours in an eight-hour period, should recline throughout the day with her feet up, would need frequent rest periods, and could occasionally climb, balance, stoop and bend, kneel, crouch, crawl, stretch, reach, and squat.

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

She further opined that Jeffries would experience both chronic moderate pain, and severe intermittent pain from her impairments, could never use her right and left hands for grasping, handling, fingering, or doing fine manipulations, and would not be capable of performing a full-time job and had been unable to do so since December 31, 2008. (R. at 753.)

The magistrate judge noted that Dr. V. McElwain's form opinion was inconsistent with her own office visit notes, as well as other evidence in the record. He specifically noted her January 20, 2011 office note, written just two days before she completed the form questionnaire, that indicated Jeffries had reported she was "doing great." (R. at 744.) Furthermore, her office notes reflect no complaints from Jeffries regarding pain when sitting, standing, walking, or using her right and left hands.

Importantly, the record also reflects that Dr. V. McElwain's opinion is inconsistent with those of the state agency reviewing physicians, Dr. Sabio and Dr. Morgan. 20 C.F.R. § 1527(f)(2)(I) provides:

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical or psychological consultants, or other program physicians or

psychologists, are highly qualified physicians and
psychologists who are also experts in Social Security
disability evaluations. Therefore, administrative law
judges must consider findings of State agency medical or
psychological consultants, or other program physicians or
psychologists, as opinion evidence except for the
ultimate determination about whether you are disabled.

Dr. V. McElwain's opinion is inconsistent with the report of

Dr. Morgan that Jeffries could both sit and stand for six hours

during an eight-hour workday, that she had no manipulative

limitations and that her allegations were not fully credible. (R.

at 552-59.) Dr. Franyutti's report agreed with these assessments.

(Dkt. No. 15 at 53.) On May 13, 2009, Dr. Sabio completed a

consultative examination of Jeffries and determined that her fine

manipulation movements were normal, and that her motor strength was

5/5 in her upper and lower extremities, bilaterally. (R. at 548.)

Further inconsistencies can be found in the September 17, 2010 note

of Dr. Luke McElwain ("Dr. L. McElwain"), a practitioner at Webster

County Memorial Hospital Clinic, who noted that Jeffries complained

of her right hand and both legs "going numb." Following an

examination, however, he noted that Jeffries could move her

extremities "well," had good strength and normal sensation, and

that her Tinel's and Phalen's signs were negative. His diagnosis

was limited to intermittent paresthesias in her hands. (R. at 657-58.)

Thus, because there is other persuasive evidence in the record that contradicts Dr. V. McElwain's functional assessment, the magistrate judge's conclusion that the record contains substantial evidence to support the ALJ's assignment of little weight to Dr. V. McElwain's opinion, even if she is considered a treating physician, is not erroneous.

### 2. **Dr. Joseph**

Jeffries next contends that Dr. Joseph's mental residual functional capacity assessment "should have been entitled to the greatest weight." (Dkt. No. 16 at 4.) The ALJ assigned "little weight" to Dr. Joseph's opinion, noting:

> Her assessment that the claimant has marked difficulty maintaining concentration, persistence, or pace is not consistent with the evidence as a whole. Considering the claimant's reported activities of daily living and the results of the prior consultative examination, the undersigned finds it highly unlikely that the deficiencies in concentration observed by Dr. Joseph are representative of her true baseline status. Rather, Dr. Joseph's examination is a mere snapshot of the claimant's overall picture as she only visited with the claimant on one occasion. Further, Dr. Joseph's opinion is somewhat contradictory as she assessed the

claimant a GAF of 55, which is indicative of
only moderate symptoms. This is inconsistent
with her opinion that the claimant had marked
difficulty with concentration, persistence, or
pace. Such an assessment is also inconsistent
with the claimant's reported activities of
daily living, which include reading, driving,
and cooking, all of which require some degree
of concentration. In order to give the
claimant the utmost benefit of the doubt, the
undersigned has incorporated those limitations
assessed by Dr. Joseph (which are consistent
with the evidence as a whole) in the above
residual functional capacity.

(R. at 38.)

In her psychological assessment, Dr. Joseph indicated that
Jeffries appeared to have lingering symptoms of PTSD, including
some concentration difficulties, had moderately impaired
concentration based on her "performance on serial 7's," (R. at
705), and had a GAF of 55, indicating moderate symptoms.[2] (R. at
707.) The magistrate judge determined that Dr. Joseph's mental
residual functional capacity assessment was inconsistent because of
discrepancies in notations indicating a marked limitation in

---

[2]A GAF of 51-60 indicates **Moderate symptoms** (e.g., flat affect
and circumstantial speech, occasional panic attacks) **OR moderate
difficulty in social, occupational, or school functioning** (e.g.,
few friends, conflict with peers and coworkers). Diagnostic and
Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed.
1994) (emphasis in original).

ability to sustain attention and concentration for extended periods (R. at 710), and another where she indicated Jeffries' concentration was moderately impaired (R. at 712.)

The magistrate judge further determined that Dr. Joseph's opinion also was inconsistent with those of the state agency reviewing psychologists. According to the medical records, on May 5, 2009, Larry J. Legg, M.A., noted that Jeffries' concentration was only mildly deficient. (R. at 528.) Eight days later, Philip E. Comer, Ph.D., indicated that Jeffries had mild difficulties in maintaining concentration, persistence, or pace. (R. at 542.) Jim Capage, Ph.D. reviewed Dr. Comer's Psychiatric Review Technique and affirmed it on August 27, 2009. (R. at 579.)

The magistrate judge's determination that Dr. Joseph's opinion was internally inconsistent, as well as inconsistent with other persuasive evidence in the record, and that the record contained substantial evidence to support the ALJ's assignment of little weight to Dr. Joseph's opinion is not erroneous.

**F.   Appeals Council Failure to Remand Regarding Evidence of Carpal Tunnel Syndrome and Diagnosis of Fibromyalgia**

Jeffries contends that the Appeals Council erred by failing to remand her case to the ALJ for consideration of additional evidence

regarding CTS and fibromyalgia. (Dkt. No. 16 at 5.) In <u>Wilkins v. Sec'y, Dep't of Health & Human Servs.</u>, 953 F.2d 93, 95-96 (4th Cir. 1991), the Fourth Circuit determined that the Appeals Council must consider additional evidence that was not submitted to the ALJ if the evidence is (1) new, (2) material, and (3) relates to the period on or before the date of the ALJ's decision. "New evidence is evidence which is not duplicative or cumulative. Evidence is 'material' if there is a reasonable possibility that it would have changed the outcome." <u>Id.</u> at 96. Evidence relates to the period on or before the date of the ALJ's decision if it provides evidence of a plaintiff's impairments at the time of the decision. See <u>Johnson v. Barnhart</u>, 434 F.3d 650, 655-56 (4th Cir. 2005).

## 1.  **Carpal Tunnel Syndrome**

After a thorough review of the evidence Jeffries submitted to the Appeals Council regarding her CTS, the magistrate judge determined that it was not material, and that the Appeals Council had not erred in failing to remand the matter to the Commissioner. The evidence submitted to the Appeals Council included the following:

1.  A February 24, 2011 report from P.A. Harper indicating a nerve conduction study showed that Jeffries was positive

for bilateral carpal tunnel syndrome, right worse than left. (R. at 776-77);

2.  A May 18, 2011 report indicting that Dr. Topping performed a right carpal tunnel release. (R. at 778);

3.  A June 3, 2011 report from P.A. Harper indicating Jeffries reported "doing very well" and that her "numbness and tingling have completely resolved." He noted that she had "full flexion extension of her fingers" and could "oppose her thumb to the base of her fourth metacarpal." (R. at 779.); and

4.  A July 14, 2011 report from P.A. Little indicating that "for the most part[,] her [Jeffries] hand [was] doing much better," that her "symptoms have resolved as far as forearm pain and numbness." (R. at 780.)

Because these reports established that there had been significant improvement in Jeffries' functioning, the magistrate judge determined that this evidence would not have changed the ALJ's finding that Jeffries' CTS was not a disabling condition (dkt. no. 15 at 56), and therefore was not material. The magistrate judge's conclusion that the Appeals Council did not err in denying remand of the case for consideration of this evidence is not erroneous. See Wilkins, 953 F.2d at 96.

## 2.  **Fibromyalgia**

The magistrate judge noted that the evidence Jeffries submitted regarding her claim of fibromyalgia included:

34

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

1.  A July 18, 2011, report from Dr. Kafka, a rheumatologist,
    following a consultative examination for polymyalgias and
    polyerthralgias (R. 832) that "reveal[ed] 17 or 18
    positive fibromyalgia tender points" and indicated that
    Jeffries met the diagnostic criteria for fibromyalgia.
    (R. at 834-35); and

2.  A July 29, 2011, report from P.A. Deaton indicating that
    Jeffries reported that "Dr. Topping . . . stated she may
    have some possible fibromyalgia from the EMG test and .
    . . she [would] be treated for fibromyalgia by her
    rheumatologist for right now."  (R. at 792).

Inasmuch as Jeffries did not allege disability due to
fibromyalgia when she filed her March 12, 2009 claims for SSI and
DBI, the ALJ never considered whether fibromyalgia should be listed
as a severe impairment. Nor does the evidence submitted to the
Appeals Council establish that she was disabled due to fibromyalgia
during the period of time prior to the March 31, 2011 decision of
the ALJ.  See Mitchell, 699 F.2d at 188.  The magistrate judge
therefore correctly determined that this evidence was not related
to the time period in question, and therefore was not material to
the issue before the ALJ. (Dkt. No. 15 at 57.)

The magistrate further concluded that remand for consideration
of the evidence regarding a diagnosis of  fibromyalgia would permit
Jeffries to prosecute a different and later disability claim based
on the original disability claim filing date, even though there is

substantial evidence that she was not disabled under her original claim. Furthermore, inasmuch as this so-called "new evidence" relates to a time period after the ALJ's decision, it is simply irrelevant to the disability claim under review. <u>See</u> 42 U.S.C. §§ 405(g) & 423(b); <u>Willis v. Sec'y of Health & Human Servs.</u>, 727 F.2d 551, 554 (6th Cir. 1984.)

Accordingly, the magistrate judge's conclusion that the Appeals Council did not err in denying remand for consideration of this evidence is not erroneous.

## VII. <u>CONCLUSION</u>

After careful examination of Jeffries' objections, the Court concludes that she has not raised any issues that were not thoroughly considered by Magistrate Judge Kaull in his R&R. Moreover, upon an independent <u>de novo</u> consideration of all matters now before it, the Court is of the opinion that the R&R accurately reflects the law applicable to the relevant facts and circumstances, and therefore **ADOPTS** the R&R and **DIRECTS** that this civil action be disposed of in accordance with the recommendation of the magistrate judge. Accordingly, the Court

1. **GRANTS** the defendant's motion for Summary Judgment (Docket No. 13);

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

2.  **DENIES** the plaintiff's motion for Summary Judgment (Docket No. 11); and

3.  **DISMISSES** this civil action **WITH PREJUDICE** and **ORDERS** that it stricken from the docket of this Court.

Pursuant to Fed.R.Civ.P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of this Order to counsel of record.

If a petition for fees pursuant to the Equal Access to Justice Act (EAJA) is contemplated, the plaintiff is warned that, as announced in <u>Shalala v. Schaefer</u>, 113 S.Ct. 2625 (1993), the time for such a petition expires in ninety days.

DATED: March 26, 2014

                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE